UNITED STATES DISTRICT COURT
EASTERN DISTRCIT OF NEW YORK
-----------------------------------------------------------------------X
JOSEPH FERGUSON,

Plaintiff,

Docket No.:

-against-

THE COUNTY OF SUFFOLK,
SUFFOLK COUNTY SHERIFF's DEPARTMENT,
YAPHANK CORRECTIONAL FACILITY, JOHN
and JANE DOE CORRECTIONS OFFICERS #1-20
(representing as yet unknown and unidentified corrections officers employed by Suffolk County, Suffolk County's Sheriff's Department and/or Yaphank Correctional Facility, in their individual and official capacities) and
and JOHN and JANE DOE MEDICAL STAFF #21-40
(representing as yet unknown and unidentified correctional medical staff employed by Suffolk County, Suffolk County's Sheriff's Department and/or Yaphank Correctional Facility, all in their individual and official capacities),

**COMPLAINT**

**JURY TRIAL DEMANDED**

Defendants.
-----------------------------------------------------------------------------------------------X

Plaintiff, JOSEPH FERGUSON, by his attorneys, GALLAGHER, WALKER, BIANCO & PLASTARAS, LLP., complaining of the defendants, hereby alleges the following upon information and belief:

## PRELIMINARY STATEMENT

1. This is a civil action seeking monetary relief, equitable relief, compensatory and punitive damages, disbursements, costs and attorneys' fees for violations of the Plaintiff's rights brought pursuant to 42 U.S.C. § 1983. Specifically, the plaintiff, JOSEPH FERGUSON [hereinafter "plaintiff"], alleges that he was deprived of adequate medical care while a detainee at defendant, YAPHANK CORRECTIONAL FACILITY [hereinafter "YAPHANK"], during a time period beginning on, or about March 15, 2021 and ending on, or about June 1, 2021. As a result

of the deprivation of adequate medical care, it is alleged that the plaintiff was subjected to cruel and unusual punishment in violation of the plaintiff's procedural and/or substantive due process rights afforded to him under the Eighth and Fourteenth Amendments of the of the United States Constitution.

2. Specifically, the Plaintiff alleges that during the aforementioned time period, the Defendants, their agents, employees and servants, etc. (collectively and individually), deliberately ignored, minimized, underplayed, etc. the plaintiff's complaints related to and refused requests for treatment for, a serious condition that was ultimately diagnosed as a severe esophageal stricture. These complaints and/or symptoms included, but were not limited to dysphagia, difficulty and an ultimate inability to swallow food and liquids, difficulty and an ultimate inability to eat, extreme weight loss, vomiting, haematemesis (vomiting blood), acid reflux, fatigue, dehydration and an inability to take antibiotic medication related to a preexisting cellulitis of his left hand that he suffered from at the time of his entry to YAPHANK. During this same time period and despite the plaintiff's obvious symptoms, virtual daily complaints and the fact that the plaintiff was relegated to a daily dietary intake consisting of Boost nutritional drinks, plaintiff's requests for treatment by hospital emergency room physicians and/or appropriate medical specialists including a gastroenterologist and E.N.T (ears, nose and throat physician) were deliberately, routinely and continuously denied and dismissed by the defendants, resulting in the plaintiff's condition to quickly and progressively deteriorate to the point where he was required to undergo significant medical intervention within days after his release from YAPHANK.

3. The aforementioned significant medical intervention is still ongoing, but has included, multiple hospitalizations, multiple unsuccessful esophageal dilation surgical and the performance of an esophagectomy. Plaintiff alleges that had he not been deprived of adequate

medical care by the defendants, he would not have had to endure months of conscious pain and suffering and mental anguish, would not have been required to undergo multiple surgical procedures and would not require the current medical treatment he currently requires.

4. For nearly two and half years, both the plaintiff, individually and the undersigned's firm on is behalf, have made numerous requests for the plaintiff's records from the DEFENDANTS for r purposes of identifying the specific CORRECTION officers and facility medical personnel that were responsible and/or involved in his general and medical supervision while he was an inmate at the facility. However, to date, the defendants have refused to provide any response to the plaintiff's requests.

**JURISDICTION**

5. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

6. Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that it is the judicial district in which a substantial part of the events or omissions giving rise to the claim. Defendants' violations of Plaintiff's civil rights occurred in Suffolk County.

**PARTIES**

7. Plaintiff is a natural person and United States citizen that currently resides in the County of Nassau, State of New York.

8. Plaintiff, at the times relevant to this complaint, was incarcerated and in the custody of the named DEFENDANTS in Suffolk County, New York.

9. Defendant, COUNTY OF SUFFOLK (hereinafter "COUNTY"), is and was a duly constituted municipal corporation organized under the laws of the State of New York.

10. Defendant, COUNTY, maintains a principal place of business of 100 Veterans Memorial Highway, Hauppauge, NY l 1788 in Suffolk County, New York.

11. Defendant, SUFFOLK COUNTY SHERIFF's DEPARTMENT [hereinafter "SHERIFF's DEPT."], is an employee, agent, servant, agency, administrative body, etc. of defendant, COUNTY with a principal place of business of 400 Carleton Avenue, Central Islip, NY 11722

12. Defendant, YAPHANK, is an employee, agent, servant, agency, administrative body, etc. of defendant, COUNTY, with a principal place of business of 200 Suffolk Avenue, Yaphank, NY 11980.

13. That all times relevant to this Complaint, Defendant, COUNTY, is and was the employer of defendants, JOHN and JANE DOE CORRECTION OFFICERS #1-20 [hereinafter "CORRECTION OFFICERS"], that were persons working for the county agency otherwise known as the SHERIFF's DEPT.

14. That all times relevant to this Complaint, the Defendants, CORRECTION OFFICERS, were employed by Defendant, COUNTY.

15. That at all times relevant to this Complaint, Defendant, COUNTY, is and was the employer of defendants, CORRECTION OFFICERS, that were persons working for the county agency otherwise known as YAPHANK.

16. That the names of the CORRECTION OFFICERS defendants are not known to Plaintiff, but are known to Defendants.

17. That at all times relevant to this Complaint, Defendant, COUNTY, is and was the employer of defendants, JOHN and JANE DOE MEDICAL STAFF #21-40 [hereinafter "MEDICAL STAFF"], that were persons working for the county agency otherwise known as YAPHANK.

18. That all times relevant to this Complaint, the Defendants, MEDICAL STAFF, were employed by Defendant, COUNTY.

19. That the names of the MEDICAL STAFF defendants are not known to Plaintiff but are known to Defendants.

20. At all times relevant in this Complaint, Defendants, CORRECTION OFFICERS, were members of YAPHANK.

21. At all times relevant in this Complaint, Defendants, CORRECTION OFFICERS, were under the direction, supervision and control of Defendant, YAPHANK.

22. At all times relevant in this Complaint, Defendants, CORRECTION OFFICERS, were under the direction, supervision and control of Defendant, COUNTY.

23. At all times relevant in this Complaint, Defendants, CORRECTION OFFICERS, were under the direction, supervision and control of Defendant, SHERIFF's DEPT.

24. At all times relevant in this Complaint, Defendants, SHERIFF's DEPT., were under the direction, supervision and control of Defendant, YAPHANK.

25. At all times relevant in this Complaint, Defendants, SHERIFF's DEPT., were under the direction, supervision and control of Defendant, COUNTY.

26. At all times relevant in this Complaint, Defendants, MEDICAL STAFF, were members of YAPHANK.

27. At all times relevant in this Complaint, Defendants, MEDICAL STAFF, were under the direction, supervision and control of Defendant, YAPHANK.

28. At all times relevant in this Complaint, Defendants, MEDICAL STAFF, were under the direction, supervision and control of Defendant, COUNTY.

29. That all times hereinafter mentioned and at the at the time this action arose, Defendant, COUNTY, was the owner of the correctional facility known as YAPHANK located at 200 Suffolk Avenue, Yaphank, NY 11980.

30. That all times hereinafter mentioned and at the at the time this action arose, Defendant, COUNTY, by its agents, servants and/or employees, operated YAPHANK.

31. That all times hereinafter mentioned and at the at the time this action arose, Defendant, COUNTY, by its agents, servants and/or employees, managed YAPHANK.

32. That all times hereinafter mentioned and at the at the time this action arose, Defendant, COUNTY, by its agents, servants and/or employees, controlled YAPHANK.

33. That all times hereinafter mentioned and at the at the time this action arose, Defendant, COUNTY, retained, employed and/or contracted Defendants, SHERIFF's DEPT., to assist in the ownership, operation, management and control of YAPHANK.

34. That all times hereinafter mentioned and at the at the time this action arose, Defendant, COUNTY, retained, employed and/or contracted Defendants, CORRECTION OFFICERS, to assist in the ownership, operation, management and control of YAPHANK.

35. That all times hereinafter mentioned and at the at the time this action arose, Defendant, COUNTY, retained, employed and/or contracted Defendants, MEDICAL STAFF, to assist in the ownership, operation, management and control of YAPHANK.

36. That all times hereinafter mentioned and at the at the time this action arose, all of the named Defendants herein were acting under the color of State law.

37. That all times hereinafter mentioned and at the at the time this action arose, all of the named Defendants herein were acting under the color of State law while owning, operating, managing and controlling YAPHANK.

38. That all times hereinafter mentioned and at the at the time this action arose, all of the named Defendants herein were acting under the color of State law while supervising the detainees, inmates and/or prisoners of YAPHANK.

39. That all times hereinafter mentioned and at the at the time this action arose, all of the named Defendants herein were acting under the color of State law while managing the detainees, inmates and/or prisoners of YAPHANK.

40. That all times hereinafter mentioned and at the at the time this action arose, all of the named Defendants herein were acting under the color of State law while controlling the detainees, inmates and/or prisoners of YAPHANK.

41. That all times hereinafter mentioned and at the at the time this action arose, the Plaintiff was a detainee, inmate and/or prisoner of YAPHANK.

## FACTUAL ALLEGATIONS

42. That Plaintiff, repeats, reiterates and realleges each and every allegation in paragraphs numbered "1-41" of this complaint with the same force and effect as through set forth at length herein.

43. That during a time period beginning on, or about March 15, 2021 and ending on, or about June 1, 2021, the plaintiff was an inmate, detainee and/or prisoner at YAPHANK.

44. On, or about March 15, 2021, the Plaintiff began complaining to Defendants that he was experiencing difficulty swallowing food and numbness in his hands and feet.

45. That the Defendants ignored and dismissed the aforementioned complaints and provided no adequate medical care in response to same.

46. Approximately one week thereafter, the Plaintiff's condition worsened and his throat closed to a point where he could no longer swallow previously prescribed antibiotic and mental health medication capsules and/or would vomit upon attempting to swallow said capsules.

47. At that time, the Plaintiff advised the Defendants of these new and worsening medical conditions and/or symptoms.

48. That the Defendants ignored and dismissed the aforementioned complaints and provided no adequate medical care in response to same.

49. That in light of plaintiff's condition and ongoing complaints, the Plaintiff requested that the MEDICAL STAFF crush the medication capsules so that they could be easier consumed.

50. That in response to the aforementioned request, MEDICAL STAFF told the plaintiff to "Suck it up and take the pill".

51. That approximately one week later, the Plaintiff could no longer swallow any solid food at all and began experiencing difficulty swallowing liquids.

52. At that time, the Plaintiff, again, advised the Defendants of these new and worsening medical conditions and/or symptoms.

53. That the Defendants ignored and dismissed the aforementioned complaints and provided no adequate medical care in response to same.

54. That at or about this same time, the Plaintiff also requested Boost and/or Ensure nutritional drinks, or some sort of other liquid meal replacement as he could not eat and was starving.

55. That in response to the aforementioned request, MEDICAL STAFF told the plaintiff that "The goal here isn't to gain weight and get big, it's to pay for the crime you

committed, or allegedly committed" and was further advised to "not piss off" the MEDICAL STAFF.

56. That the Defendants ignored and dismissed the aforementioned request and provided no adequate medical care in response to same.

57. That thereafter, the plaintiff experienced an episode of haematemesis (vomiting blood).

58. That upon experiencing this episode of haematemesis (vomiting blood), the plaintiff was not seen by a member of the MEDICAL STAFF for approximately one hour.

59. That once seen by MEDICAL STAFF, the plaintiff requested that he be sent to a hospital given his worsening condition and due to the fact that he was now vomiting blood.

60. That in response to said request, the CORRECTION OFFICERS and MEDICAL STAFF made a joke of the plaintiff's request for hospital treatment.

61. That in response to said request, the CORRECTION OFFICERS and MEDICAL STAFF threatened that should Plaintiff push for hospital treatment, that he would be "quarantined" for "14 days" upon his return to YAPHANK from any such hospital.

62. That in response to the plaintiff's vomiting of blood, the Defendants ignored same and provided no adequate medical treatment.

63. That in response to plaintiff's request for treatment at a hospital given the severity of and worsening of his condition, the Defendants ignored same and provided no adequate medical treatment.

64. That thereafter, the plaintiff could no longer take any medication and could no longer eat solid food.

65. That thereafter, the plaintiff continued to making the aforementioned complaints to the Defendants and also requested liquid dietary supplements.

66. That in response to these complaints and requests, the MEDICAL STAFF and/or CORRECTION OFFICERS, advised the plaintiff to "stop being such a baby", that the Plaitniff's complaints and condition was "psychosomatic" and to "stop calling his mommy".

67. That in response to plaintiff's continued requests for treatment at a hospital and liquid dietary supplements given the severity of and worsening of his condition, the Defendants continued to ignore, dismiss, downplay, joke and/or ridicule the Plaintiff's worsening condition and provided no adequate medical treatment.

68. That thereafter, the Plaintiff there were multiple instances where the Plaintiff's daily diet consisted of only watered-down chicken and/or beef broth each meal.

69. That thereafter, the Plaintiff continued to complain to MEDICAL STAFF and CORRECTION OFFICERS of his inability to swallow and/or eat and of his progressive and extreme weight loss resulting from same.

70. That in response to plaintiff's continued requests for treatment at a hospital and liquid dietary supplements given the severity of and worsening of his condition, the Defendants continued to ignore, dismiss, downplay, joke and/or ridicule the Plaintiff's worsening condition and provided no adequate medical treatment.

71. That as a result of all of the aforementioned, on, or about April 6, 2021, the Plaintiff was forced to write a letter threatening legal action to YAPHANK medical supervisor, known as "Mike", as well as the YAPHANK warden, advising of all of the aforementioned and again, requesting to be seen by an outside physician specializing in either gastroenterology and/or E.N.T..

72. That it was only after receipt of said letter that the Defendants advised plaintiff that he would be "put on a list" to be seen by an outside physician.

73. That following plaintiff's writing and submission of the aforementioned letter, he received a visit to his cell by a "Captain" of CORRECTION OFFICERS (the name of whom is currently unknown to plaintiff) and was told to "stop with the letters, you're going to get me in trouble" and that "you're are making me look bad".

74. That thereafter, the plaintiff was not seen by an outside physician until April 22, 2021.

75. That between the time the Plaintiff was told he was "put on a list" to be seen by an outside physician and the time of actually being seen by one, the plaintiff deteriorated to the point where he could no longer swallow anything at all, including liquids.

76. That the plaintiff reported the aforementioned condition and/or symptoms to both members of the MEDICAL STAFF and the CORRECTION OFFICERS and again, requested that he be permitted to seek treatment at a hospital.

77. That in response to the Plaintiff's aforementioned reporting of his condition to the MEDICAL STAFF ignored same and provided no adequate medical care in response to the complaints.

78. That in response to the Plaintiff's aforementioned reporting of his condition to the CORRECTION OFFICERS he was told that going to the hospital "was not up to him", was told to "go f*ck himself", was sarcastically called a "sick person" and was threatened to be removed from his assigned dorm cell to a "sick person" dorm.

79. That thereafter, the plaintiff was sent to be seen by an outside physician on April 22, 2021.

80. That said outside physician recommended additional testing and further workup on the Plaintiff to rule out an esophageal stricture to the MEDICAL STAFF to be performed at YAPHANK.

81. That the Defendants ignored the outside physician's recommendations as to the additional testing and further workup on the Plaintiff and never performed same.

82. That approximately one week thereafter, the Plaintiff's condition worsened to the point where he could not swallow anything at all.

83. That the Plaintiff, again, reported his worsening condition to the MEDICAL STAFF and requested he be sent to a hospital.

84. That on April 28, 2021, the plaintiff filed a Grievance with the SHERIFF's DEPT. related to his serious medical condition, as well as his cruel and inhumane treatment at YAPHANK

85. That only after the Plaintiff's mother called the jail was Plaintiff finally sent to a hospital on April 30, 2021.

86. That the physicians at the hospital recommended additional testing and further work up of the Plaintiff.

87. That the Plaintiff was advised by the physician at the hospital that the aforementioned recommendations were discussed with MEDICAL STAFF at YAPHANK and said physician inquired as to whether YAPHANK wanted said physician to perform the recommended additional testing and further workup on the plaintiff at the hospital, or whether he should be sent back YAPHANK to have it performed by MEDICAL STAFF at YAPHANK.

88. That the plaintiff was further advised that the MEDICAL STAFF at YAPHANK advised said hospital physician to send the Plaintiff back to YAPHANK for purposes of performing the additional testing and further workup.

89. That, thereafter, the Plaintiff was sent back to YAPHANK.

90. That upon return to YAPHANK and up to the time of his release from YAPHANK in early May 2021, the aforementioned additional testing and further workup recommended plaintiff undergo was never performed by the Defendants at YAPHANK.

91. Within approximately 24 hours of his release from YAPHANK, the plaintiff presented to the emergency room of Peconic Bay Medical Center with essentially the identical complaints he had been conveying to the Defendants during his incarceration at YAPHANK.

92. That Plaintiff was admitted to said hospital, diagnosed with a severe esophageal stricture and ultimately transferred to North Shore Long Island Jewish Hospital for treatment of same.

93. That thereafter, the plaintiff was hospitalized and underwent multiple failed dilation and stenting procedures in order to treat the sever stricture.

94. That thereafter, the plaintiff was required to undergo bi-weekly dilations of the severe esophageal stricture during an approximate 6 month time period.

95. That thereafter, the plaintiff was required to again be hospitalized and ultimately have an esophagectomy performed.

96. That the plaintiff currently requires treatment for and does in fact continue to treat for the aforementioned condition.

97. That during the aforementioned time period the Plaintiff's complaints to the Defendants included, but were not limited to dysphagia, difficulty and an ultimate inability to

swallow food and liquids, difficulty and an ultimate inability to eat, extreme weight loss, nausea, vomiting, haematemesis (vomiting blood), acid reflux, fatigue, dehydration, relegation to a liquid only diet and an inability to take antibiotic medication related to a preexisting cellulitis of his left hand that he suffered from at the time of his entry to YAPHANK and requests for treatment and work up by hospital and/or outside physicians.

98. That during the aforementioned time period, the Plaintiff had readily observable signs and symptoms of an ongoing severe medical condition that included, but were not limited to dysphagia, difficulty and an ultimate inability to swallow food and liquids, difficulty and an ultimate inability to eat, extreme weight loss, vomiting, haematemesis (vomiting blood), dehydration and relegation to a liquid only diet.

99. That during the aforementioned time period, the plaintiff's esophageal stricture progressively worsened resulting in a loss chance of cure and/or denial of conservative treatment for same and/or the need for more invasive treatment for same.

100. That during the aforementioned time, the plaintiff's medical issues and/or conditions were serious and required serious medical attention.

101. That during the aforementioned time, the Defendants were deliberately indifferent to the Plaintiff's serious medical needs.

102. That during the aforementioned time period, the Defendants knew, or should have known that the Plaintiff faced a substantial risk of serious harm without adequate and proper medical treatment.

103. That during the aforementioned time period, the Defendants disregarded the substantial risk of serious harm faced by the Plaintiff.

104. That during the aforementioned time period, the Defendants deprived the Plaintiff of adequate medical care.

105. That during the aforementioned time period, the inadequacy of the medical care afforded to Plaintiff by the Defendants was sufficiently serious as evinced by the multiple hospitalizations and treatment the Plaintiff was required to and continues to undergo once his incarceration ended at YAPHANK.

**AS AND FOR A FIRST COUNT**
**42 U.S.C. §1983 – INADEQUATE MEDICAL CARE and CRUEL and UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS**
**(against all Defendants individually and collectively)**

106. That Plaintiff, repeats, reiterates and realleges each and every allegation in paragraphs numbered "1-105" of this complaint with the same force and effect as through set forth at length herein.

107. That an esophageal stricture is a serious and/or potentially serious medical condition that requires serious, appropriate and adequate medical care.

108. That the Plaintiff's complaints of dysphagia, difficulty and an ultimate inability to swallow food and liquids, difficulty and an ultimate inability to eat, extreme weight loss, nausea, vomiting, haematemesis (vomiting blood), acid reflux, fatigue, dehydration, relegation to a liquid only diet and an inability to take antibiotic medication are signs and/or symptoms of a serious, or potentially serious medical condition.

109. That the Plaintiff's readily observable signs and symptoms of dysphagia, difficulty and an ultimate inability to swallow food and liquids, difficulty and an ultimate inability to eat, extreme weight loss, vomiting, haematemesis (vomiting blood), dehydration and relegation to a liquid only diet are signs of a serious, or potentially serious medical condition.

117. That the fact that the inadequacy of the medical care afforded to Plaintiff by the Defendants was sufficiently serious can be inferred by the multiple hospitalizations and extensive treatment the Plaintiff was required to and continues to undergo upon his release from YAPHANK.

118. That the Eighth Amendment prohibits the Defendants from using of cruel and unusual punishment on prisoners confined to a correctional facility.

119. That the Eighth Amendment imposes a duty on the Defendants to provide humane conditions of confinement and to provide adequate medical care to its prisoners.

120. That based upon all of the foregoing, the Defendants acted deliberately indifferent to the Plaintiff's serious medical needs.

121. That based upon all of the foregoing, the Defendants deprived the Plaintiff of adequate medical attention for his serious medical needs.

122. That based on all of the foregoing, the Defendants violated the rights afforded to the Plaintiff's under the Eighth and Fourteenth Amendments of the United States Constitution.

123. That based on all of the foregoing, the Defendants deprived the Plaintiff of his Constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution.

124. That based on all of the foregoing, the Defendants subjected the Plaintiff to cruel and unusual punishment.

125. That based upon all of the foregoing, the Defendants deprived the Plaintiff of his constitutional rights secured by 42 U.S.C. §1983.

126. That as a result of the foregoing depravation of rights, the Plaintiff sustained damages.

126. That as a result of the foregoing depravation of rights, the Plaintiff was caused to sustain serious personal injuries requiring extensive and ongoing treatment, corrective surgeries, as well as emotional and psychological injuries.

127. That the Defendants failure to provide adequate medical care to the Plaintiff was a direct and proximate cause of the Plaintiff's damages.

128. That the Defendants violations of the Plaintiff's Eighth Amendment, Fourteenth Amendment and 42 U.S.C. §1983 rights were a direct and proximate cause of the plaintiff's damages.

129. That by reason of the foregoing, the Plaintiff suffered severe physical and emotional damages, distress, pain, suffering, loss of wages, loss of self-esteem, self-doubt, and has been exposed to disgrace, humiliation and embarrassment, was deprived of his constitutional rights and has been damaged in the sum in excess of seven million ($7,000,000.00) dollars, including the cost of this action and attorney's fees pursuant to 42 U.S.C. §1988, as well as punitive damages.

**PUNITIVE DAMAGES**
**(Against All DEFENDANTS Individually)**

130. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1-129 of this Complaint with the same force and effect as though fully set forth herein.

131. That the acts of the individual Defendants (who are not yet known but known to Defendants) herein were willful, wanton, reckless, malicious and oppressive and were motivated by a desire to harm Plaintiff without regard for Plaintiff's well-being, and were based on a lack of

concern and ill-will towards Plaintiff. Such acts therefore deserve an aware of twenty million ($20,000,000.00) as punitive damages.

**WHEREFORE**, PLAINTIFF demands judgment against DEFENDANTS:

a. On the First Cause of Action in the sum in excess of seven million ($7,000,000.00) dollars.

b. Punitive damages in the amount of twenty million ($20,000,000.00) dollars.

c. An order granting such other legal and equitable relief as the court deems just and proper.

d. Award costs of this action including attorney's fees to the PLAINTIFF pursuant to 42 U.S.C. § 1988 and any and all applicable attorney's fees and costs as imposed by federal and state-law.

**A JURY TRIAL IS HEREBY DEMANDED**

Dated: Mineola, New York
March 13, 2024

Respectfully Submitted,

GALLAGHER, WALKER, BIANCO
& PLASTARAS, LLP.

By: ______________________
MICHAEL R. WALKER
Attorneys for Plaintiff
98 Willis Avenue
Mineola, NY 11501
(516) 24-2002